UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JAMAH GRANT,

                Plaintiff,

    -v-

SHIELDS, Deputy Superintendent of
Security,

                Defendant.

_____

**DECISION AND ORDER**

1:19-CV-1188 EAW

## <u>INTRODUCTION</u>

*Pro se* Plaintiff, Jamah Grant, an inmate formerly incarcerated at the Five Points Correctional Facility ("Five Points"), filed this action seeking relief under 42 U.S.C. § 1983. (Dkt. 1). Following initial reviews of plaintiff's complaint and amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a), the Court determined that Plaintiff's conditions of confinement and retaliation claims against Defendant Deputy Superintendent of Security Shields ("Defendant Shields") may proceed to service, but his remaining claims against corrections officers Saunders ("C.O. Saunders"), Chatell ("C.O. Chatell"), and others were dismissed with prejudice for failure to state a claim upon which relief may be granted. (Dkt. 14; Dkt. 19). On October 4, 2021, Plaintiff filed a second amended complaint. (Dkt. 23).

Before the Court is Defendant Shields' motion to dismiss Plaintiff's second amended complaint (Dkt. 25) and Plaintiff's motion for the appointment of counsel (Dkt.

22).  For the reasons discussed below, the motion to dismiss is denied and the motion for the appointment of counsel is denied without prejudice.

## DISCUSSION

I.   **Factual Background**

The following facts are taken from Plaintiff's second amended complaint.  (Dkt. 23).[1]  As required on a motion to dismiss, the Court treats Plaintiff's well-pleaded factual allegations as true and must draw all reasonable inferences in Plaintiff's favor.

On July 18, 2019, C.O. Saunders planted a weapon in Plaintiff's cell and had C.O. Chatell write the misbehavior report for possession of the weapon because "[Plaintiff] had filed multiple grievances against C.O. Saunders." (*Id*. at 1).  C.O. Saunders could not herself write the misbehavior report because if she had, the retaliation would have been obvious.  (*Id*.).  In the fabricated misbehavior report, C.O. Chatell falsely stated that Plaintiff's cell was authorized to be searched by Defendant Shields.  (*Id*.).  But Defendant Shields authorized Plaintiff's cell to be searched on July 16, 2019, and a cell can only be searched every 30 days.  (*Id*.).

After the misbehavior report arising from the weapon possession was filed, Plaintiff was sent to the special housing unit.  (*Id*. at 3).  He alleges that if C.O. Saunders had not

---

[1]     On October 4, 2021, Plaintiff filed a second amended complaint without leave of court.  (Dkt. 23).  Defendant Shields' motion is directed to the second amended complaint.  (Dkt. 25).  Because Defendant Shields does not object to the filing of the second amended complaint on procedural grounds and instead directs his motion to dismiss to that pleading, the Court will presume Defendant Shields' consent to its filing and treat the second amended complaint as the operative pleading.  *See* Fed. R. Civ. P. 15(a)(2).

- 2 -

planted the weapon in Plaintiff's cell and falsely stated that Defendant Shields had authorized the search, Defendant Shields would not have known who Plaintiff was or had reason to direct his corrections officers to set up Plaintiff a second time. (*Id.*). But nine days after being released from the special housing unit on the weapons charge, which was ultimately dismissed, Plaintiff was targeted by Defendant Shields. (*Id.*). Plaintiff alleges that Defendant Shields authorized additional searches of his cell on August 11, 2019, and August 13, 2019, and later on August 13, 2019, placed Plaintiff on contraband watch and had three more misbehavior reports issued against Plaintiff. (*Id.*). During the nine days Plaintiff was on contraband watch, he had no clothes, mattress, sheets, or blanket, and had to sleep on a metal bed in a freezing observation cell. (*Id.*). No contraband was ever located. (*Id.*). Despite Plaintiff's requests that Defendant Shields transfer him to another facility to protect his life and safety, Defendant Shields refused. (*Id.*). Plaintiff brought his grievances and complaints to the attention of multiple authority figures with no relief. (*Id.* at 3-4).

## II.    Procedural Background

Plaintiff commenced the instant action on September 5, 2019. (Dkt. 1). On February 16, 2021, the Court issued a screening order of Plaintiff's complaint, permitting the claims for retaliation and conditions of confinement against Defendant Shields to go forward and granting Plaintiff leave to amend some of his remaining claims. (Dkt. 14). On June 1, 2021, Plaintiff filed an amended complaint. (Dkt. 17). On August 12, 2021, the Court conducted a screening order of Plaintiff's amended complaint, reaffirming that the claims against Defendant Shields could proceed, but dismissing with prejudice any

remaining claims. (Dkt. 19). On October 4, 2021, Plaintiff filed the motion to appoint counsel (Dkt. 22) that is presently before the Court and his second amended complaint (Dkt. 23).

On December 23, 2021, Defendant Shields filed the instant motion to dismiss Plaintiff's second amended complaint. (Dkt. 25). Plaintiff requested (Dkt. 27) and was granted (Dkt. 28) an extension of time to file a response to Defendant Shields' motion. On February 25, 2022, Plaintiff filed his opposition to the motion to dismiss. (Dkt. 29).

## DISCUSSION

### I.    Legal Standards

#### A.    Rule 12(b)(6)

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [pleading], documents attached to the [pleading] as exhibits, and documents incorporated by reference in the [pleading]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the [claimant]." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [claimant] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

- 4 -

"While a [pleading] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a [claimant]'s obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the [pleading]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

While the Court is "obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must satisfy the plausibility standard set forth in *Iqbal* and *Twombly*, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("Even after *Twombly*, though, we remain obligated to construe a *pro se* complaint liberally."). "Specific facts are not necessary," and a plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (discussing pleading standard in *pro se* cases after *Twombly*: "even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").

### B.    Section 1983 Claims

"To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2)

deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

To establish liability against an official under § 1983, a plaintiff must allege that individual's personal involvement in the alleged constitutional violation; it is not enough to assert that the defendant is a link in the chain of command. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). Moreover, the theory of *respondeat superior* is not available in a § 1983 action. *See Andrews v. City of Rochester*, No. 21-CV-6764-FPG, 2022 WL 2356630, at *3 (W.D.N.Y. June 30, 2022). "Instead, a plaintiff must plead and prove that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (internal quotation marks and citation omitted).

## II.    Defendant Shields' Motion to Dismiss

### A.    Retaliation Claims

Plaintiff alleges that the misconduct attributed to Defendant Shields was in retaliation for Plaintiff's constitutionally protected conduct. Specifically, Plaintiff alleges that he initially filed grievances against C.O. Saunders, who participated in a cell search, placed a weapon in Plaintiff's cell, and had a misbehavior report filed against Plaintiff falsely indicating that Defendant Shields had authorized the search. Plaintiff argues that

Defendant Shields became aware of the bogus report containing his name while Plaintiff was still housed in the special housing unit.  (Dkt. 29 at 1).  He alleges that Defendant Shields then targeted Plaintiff following his release from special housing by authorizing additional cell searches, "setting up" Plaintiff by placing him on contraband watch, and having three misbehavior reports filed against him.

It is axiomatic that prison officials may not retaliate against prisoners for exercising their constitutional rights.  *Mt. Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977).  To make out a § 1983 retaliation claim, a prisoner must show: (1) that he was engaged in constitutionally protected conduct; and (2) that the prison official's conduct was taken in retaliation for the prisoner's protected conduct.  *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).  A finding of sufficient permissible reasons to justify state action is "readily drawn in the context of prison administration where we have been cautioned to recognize that prison officials have broad administrative and discretionary authority over the institutions they manage."  *Lowrance v. Achtyl*, 20 F.3d 529, 535 (2d Cir. 1994) (quotation and citation omitted).

Moreover, courts recognize that retaliation claims by prisoners are "prone to abuse" since prisoners can claim retaliation for every decision they dislike.  *Vazquez v. City of New York*, No. 1:21-CV-01573 (PAE)(VF), 2022 WL 2704763, at *13 (S.D.N.Y. June 17, 2022) ("A prisoner's claims of retaliation must be examined with particular care, however, because they are '"prone to abuse" since prisoners can claim retaliation for every decision they dislike.'" (quoting *Graham*, 89 F.3d at 79)), *report and recommendation adopted*, No. 21-CIV-1573(PAE)(VF), 2022 WL 2704469 (S.D.N.Y. July 11, 2022).  "Accordingly,

even though [p]risoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right, courts must examine a prisoner's retaliation claim with skepticism and particular care." *Speaks v. Saeed*, No. 14-CV-06826 (JMA)(AYS), 2022 WL 541767, at *7 (E.D.N.Y. Feb. 23, 2022) (quotation and citation omitted).

"As a general matter, it is difficult to establish one defendant's retaliation for complaints against other correctional officers," but "this general rule may not apply where there are indications of 'a retaliatory purpose—i.e., that the [officer's conduct] was meant to penalize [the plaintiff] for bringing past grievances, and to dissuade future grievances.'" *Mack v. Wood*, No. 9:17-CV-1146(BKS/ATB), 2019 WL 5197230, at *6 (N.D.N.Y. July 26, 2019), *report and recommendation adopted*, No. 917CV1146 (BKS/ATB), 2019 WL 4183894 (N.D.N.Y. Sept. 4, 2019); *Moreau v. Ellsworth*, No. 9:20-CV-124 (DNH/ATB), 2021 WL 3813172, at *11 (N.D.N.Y. July 15, 2021) (holding that "while a plaintiff who 'alleges retaliatory adverse action by one officer for a grievance filed against another officer . . . faces a heightened burden of establishing a causal connection,' this does not necessarily bar a retaliation claim where there are indications of 'a retaliatory purpose'" (quoting *Vincent v. Sitnewski*, 117 F. Supp. 3d 329, 338-39 (S.D.N.Y. 2015)), *report and recommendation adopted*, No. 9:20-CV-124, 2021 WL 3793772 (N.D.N.Y. Aug. 26, 2021). "A plaintiff can establish a causal connection that suggests retaliation by showing that protected activity was close in time to the adverse action." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

Any claim that Plaintiff's cell was searched in retaliation for prior grievances does not alone give rise to a constitutional claim for retaliation. *See Hudson v. Palmer*, 468 U.S. 517, 527 (1984); *Bumpus v. Canfield*, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007) ("It is well-settled . . . that plaintiff cannot base a retaliation claim . . . on a cell search"). But Plaintiff alleges more than just a cell search. He contends that Defendant Shields retaliated against Plaintiff's prior filing of grievances against corrections officers by bogusly placing Plaintiff on contraband watch and having misbehavior reports filed against him. While the second amended complaint does not expressly allege that Plaintiff filed grievances or other protected complaints against Defendant Shields prior to Plaintiff's placement on contraband watch, Plaintiff has minimally alleged a causal connection between the protected activity of the grievances he filed against C.O. Saunders and the adverse action by Defendant Shields supporting an inference of retaliation. Moreover, the temporal proximity between all of the alleged events and the fact that the weapons charge was dismissed and no contraband was recovered credits the inference Plaintiff draws. To be sure, Plaintiff's allegations are not a model of clarity and the Court expresses no opinion as to whether they may survive a motion for summary judgment. But at this stage of the proceedings, taking the facts in the second amended complaint as true, the Court concludes that Plaintiff has adequately alleged a claim against Defendant Shields for retaliation.

### B.    Conditions of Confinement Claim

In order to state a valid conditions of confinement claim under the Eighth Amendment, a plaintiff must allege: (1) the conditions were so serious that they constituted a denial of the "minimal civilized measure of life's necessities," and (2) the prison officials

acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 297-99 (1991). "At the motion to dismiss stage, the Court must determine whether the plaintiff's allegations lead to the plausible inference that the plaintiff was deprived of [his] basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety or was exposed to conditions that pose[d] an unreasonable risk of serious damage to [his] future health." *Edwards v. Gutwein*, No. 21-CV-03183 (PMH), 2022 WL 1093558, at *7 (S.D.N.Y. Apr. 7, 2022) (quotation and citation omitted). The second subjective element requires that in denying humane conditions of confinement, the official was aware of and disregarded a substantial and excessive risk to the inmate's health or safety. *Id.*

While on contraband watch, Plaintiff alleges that he was stripped naked, forced to sleep on a steel bed with no mattress, sheets, or a blanket for nine days, and denied all access to health care. The placement on contraband watch—for which no contraband was ever recovered—and the related conditions he was subjected to and denial of access to medical care occurred in the immediate aftermath of Plaintiff's attempts to seek redress of grievances. The Court finds that when taken as true, as the Court must, the circumstances alleged contribute to a conclusion that Plaintiff has stated a plausible Eighth Amendment conditions of confinement claim against Defendant Shields. *See generally Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995) ("Under contemporary standards of decency, a jury could justifiably consider incarceration of a naked prisoner for several days in a dark, stuffy, feces-smeared mental observation cell, without any personal amenities, following a violent assault at the hands of corrections officers, to be an additional trauma inflicted without penological justification, and thus in violation of [plaintiff's] Eighth Amendment

right to be free from cruel and unusual conditions of confinement."); *Morrison v. Stroman*, 12-CV-00542-LJV-JJM, 2016 WL 11478162, at *4 (W.D.N.Y. Aug. 4, 2016) (granting summary judgment to defendants who argued that contraband watch for seven days did not establish deliberate indifference where plaintiff "does not allege that he was denied food, water, or medical attention while under watch."), *report and recommendation adopted*, 12-CV-00542, 2018 WL 4111166 (W.D.N.Y. Aug. 29, 2018).

Defendant Shields argues that Plaintiff fails to specifically allege that Defendant Shields actually knew of and disregarded the allegedly inhumane conditions under which Plaintiff suffered in contraband watch, subjecting the claim to dismissal.  But Plaintiff argues in response that not only does Defendant Shields make rounds regularly in contraband watch, but that only the Deputy Superintendent of Security (i.e. Defendant Shields) can release an inmate from contraband watch, so it is not credible to contend that Defendant Shields was unaware of those conditions.  (Dkt. 29 at 3).  While the Court acknowledges these facts supporting Defendant Shield's express knowledge are not contained in Plaintiff's second amended complaint, in light of Plaintiff's *pro se* status, the Court nevertheless concludes that Plaintiff's allegations that Defendant Shields was personally responsible for punitively placing Plaintiff on contraband watch, where he was denied basic necessities and medical care, in order to retaliate against him, are sufficient. Accordingly, on these facts and at this stage, the Court concludes the claim may proceed. However, much like with Plaintiff's retaliation claim, the Court expresses no opinion on whether this claim can withstand a summary judgment motion.

### III.     Plaintiff's Motion for the Appointment of Counsel

As noted, at the same time that Plaintiff filed his second amended complaint, he moved for the appointment of counsel.  For the reasons set forth below, Plaintiff's motion for the appointment of counsel is denied without prejudice.

Pursuant to 28 U.S.C. § 1915(e), the Court may appoint counsel to assist indigent litigants, *Sears, Roebuck & Co. v. Charles Sears Real Estate, Inc*., 865 F.2d 22, 23-24 (2d Cir. 1988), and the assignment of *pro bono* counsel in civil cases is within the trial court's discretion, *In re Martin-Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984).  The Court must evaluate "the merits of [the] plaintiff's case, the plaintiff's ability to pay for private counsel, his efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel."  *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989).  Particular attention must be paid to the merits of the plaintiff's claim.  *Id.*  ("Even where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." (quoting *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986))).  This is because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause."  *Id.*

Plaintiff was previously granted leave to proceed *in forma pauperis*.  (Dkt. 14).  As such, Plaintiff has met the threshold test for appointing counsel by demonstrating he is indigent.

However, on balance, the above-referenced factors weigh against appointing counsel at this time.  Plaintiff has not demonstrated that he has made adequate attempts to

obtain an attorney. *See, e.g.*, *Klinger v. Schwartz*, No. CIVA3:01CV2311CFD, 2004 WL 2381737, at *3 n.1 (D. Conn. Sept. 30, 2004) ("[The plaintiff] does not indicate that he has made any attempt to obtain legal representation, or even that he has contacted Inmates' Legal Assistance Program."). Additionally, since commencing the action, Plaintiff has amended his complaint twice and filed his opposition to Defendant Shields' motion to dismiss, showing himself to be reasonably adept at motion practice and presenting relevant facts to the Court. *See Castro v. Manhattan E. Suite Hotel*, 279 F. Supp. 2d 356, 358 (S.D.N.Y. 2003) (denying the plaintiff's motion to appoint counsel because "the case does not present novel or overly complex legal issues, and there is no indication that [the plaintiff] lacks the ability to present his case"). Further, Plaintiff's remaining claims are against only one defendant and both claims arise from incidents occurring in a relatively short time period. As such, the trial will turn on the jury's determination as to the credibility of the witnesses, not any complex factual or legal issues in which Plaintiff is incapable of handling on his own. *See Hughes v. Neimer*, No. 12-CV-6024, 2016 WL 1192694, at *3 (W.D.N.Y. Mar. 22, 2016) (denying appointment of counsel where plaintiff's excessive force claim centered on single incident and did not present complex factual or legal issues "as to make it impossible for plaintiff to proceed without counsel"). After balancing the factors set forth in *Cooper*, the Court finds that appointing counsel for Plaintiff in this matter is inappropriate at this time. Accordingly, the Court denies Plaintiff's motion to appoint counsel (Dkt. 22) without prejudice.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant Shields' motion to dismiss (Dkt. 25) is denied.

Plaintiff's motion for the appointment of counsel (Dkt. 22) is denied without prejudice.

Defendant Shields is directed to respond to the second amended complaint in accordance

with the Federal Rules of Civil Procedure.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  August 22, 2022
        Rochester, New York

- 14 -